STATE EX REL. SWINT, RENNICK & CO. v. SANDUSKY CO. (COMRS.).

1. MANDAMUS WILL LIE TO COMPEL AWARD OF CONTRACT TO LOWEST BIDDER, WHEN.

It is not improbable that mandamus will lie to compel county commissioners to award a contract for a public improvement to the lowest and best bidder, when the statute requires such action on their part, and it appears by undisputed evidence, or concession in pleadings, that one of the bidders is the lowest and best, and that the commissioners are fraudulently colluding for the award of the contract to another bidder.

[For other cases in point, see 2 Cyc. Dig., "Bridges," §§ 78-92; 3 Cyc. Dig., "Counties," §§ 364-369, 384-397; 5 Cyc. Dig., "Mandamus," §§ 293-309.—Ed.]

2. OTHERWISE IF CONTRACT BE ONE NOT REQUIRED TO BE AWARDED BY PUBLIC BIDDING, ETC.

But where the petition fails to disclose that the contract is one which the commissioners are required to award by public bidding, the fact that they did advertise in regular form for bids with a reservation of the right to reject any or all, does not afford ground for compelling them to accept the lowest and best bid, or for complaint because an amendment was permitted to one of the bids after expiration of the time fixed for their filing, whereby better figures were obtained for the county.

[For other cases in point, see 3 Cyc. Dig., "Counties," §§ 391-397; 5 Cyc. Dig., "Mandamus," §§ 371-383.—Ed.]

[Syllabus by the court.]

ERROR to Sandusky common pleas court.

Erie County.

**H. C. De Ran,** for plaintiff in error.

**M. W. Hunt,** for defendant in error.

PER CURIAM.

This is a proceeding by which the plaintiff in error seeks to reverse a judgment of the court of common pleas, sustaining a demurrer to the amended petition of plaintiff and dismissing the plaintiff's action. The case is one instituted in the court below for injunction and mandamus.

The plaintiff, in its amended petition, alleges that the relators. together with other persons. submitted bids for the construction of certain bridges in said county, and that the relators were the lowest and best bidders therefor. It is claimed that plans and specifications and estimates were prepared and that the proceedings of the board of county commissioners of said county were taken under Rev. Stat. 795 to 800 (Lan. 1759 to 1765), inclusive; that notices were published for four weeks in a newspaper published and of general circulation in said county, soliciting such bids, in pursuance of said plans and specifications, for each of said bridges separately, and with a provision in said notices that bids would be received up to 12 o'clock noon on March 2, 1906. The plaintiff says that relators filed, in due form, within the time named in the notice, a sealed bid in all respects as required by the notice published and by the statute and in accordance with the said plans and specifications, agreed to furnish materials and do the required work upon all said bridges for the sum of $709.08.

The amended petition alleges, further, among other matters, that at the time specified in said notice, the said board of commissioners opened and read the bids and that the said board of commissioners, together with the county surveyor, tabulated the same and found and declared the bid of the relators to be the lowest and best bid, but adjourned for the noon hour without awarding the contract; that at a later hour of the same day the said board of commissioners reassembled for the purpose of taking further action in the matter of awarding the contract.

The amended petition further alleges that the bid of another party, known as the Hughes Brothers, was of like character with that of the relators, but was for the sum of $929.07; and that during the adjournment of said board of commissioners and after the opening of the bids, and before the reassembling of the said board, the said Hughes Brothers acting in collusion with certain members of said board of county commissions, added to their bid and proposal the following sentence: "If the said board awards the said Hughes Brothers all the said bridges, we

will allow a reduction of 15 per cent from the total amount stated in this bid." It is further alleged that said Hughes Brothers and certain members of said board illegally colluded, and fraudulently conspired in the making and procuring of said change and alteration in said Hughes Brothers' bid, and that said change and alteration were made after 12 o'clock on March 2, 1906, and after all the bids herein mentioned and described had been opened and read by the said board of commissioners, and that said change and alteration were contrary to the terms and conditions prescribed in said notice by the said commissioners and contrary to and in violation of law; that said reduction in price was made after the bids had been opened and read and after the relators had been ascertained to be the lowest bidders and after said commissioners and Hughes Brothers had full knowledge that relators were the lowest and best bidders and was made in fraud and violation of relators' rights in the premises.

The plaintiff alleges the intention of said board to enter into a contract with said Hughes Brothers for furnishing of the work and materials for said bridges and that they will do so unless restrained by the order of the court. Based upon these and other facts mentioned, the plaintiff asks for a writ of mandamus against the said board commanding it to award its said contract to the relators, and also that said board be enjoined from entering into any contract with said Hughes Brothers. The demurrer to this amended petition is upon the ground that it does not state facts constituting a cause of action, and that said facts do not entitle the relators to the relief asked. The estimated cost of the contemplated structures is not stated in the amended petition, except that as to each of the bridges it is less than $1,000. Copies of the notice and of the relators' alleged bids are attached to said amended petition and made a part thereof.

By the filing of a demurrer the allegations of the amended petition are, of course, to be taken as true, including the averment that some of the commissioners colluded with Hughes Brothers as to the alteration of their bid and that the bid of relators was the lowest and best bid among those submitted. The notice published by the commissioners contained an express reservation of a right "to reject any or all bids."

We have no doubt, under the facts admitted by the demurrer, as to the right of a taxpayer of the county to an injunction to restrain the commissioners from awarding the contract to the Hughes Brothers after the refusal of the prosecuting attorney to institute such suit. There is here, however, no allegation either that the relators are taxpayers or that the prosecuting attorney has been requested or has

refused to institute such proceedings for an injunction. It seems to be conceded, by both parties, that the question now pending before our court involves only the sufficiency of the facts alleged by the relators to entitle them to the writ of mandamus compelling the county commissioners to award to them the contract.

It has been generally held that the courts will not, by mandamus, interfere with the discretion of the commissioners and like bodies, in determining as to which among several bidders for a contemplated improvement, is the lowest and best bidder. These cases, however, so far as we are advised, have not involved the consideration of such facts as are herein disclosed, and it is not improbable that, in a case where, under the statute, the commissioners are compelled to award a contract for an improvement to the lowest and best bidder, if it should appear by the undisputed evidence, or concession in pleadings, as here, that one of the bidders was the lowest and best, and that the commissioners were fraudulently colluding with another to defeat the statute, the court might interfere by mandamus.

But does this amended petition disclose a case in which the commissioners were compelled to let the contract or contracts, for the construction of these bridges upon competitive bidding? As already stated, the estimated cost of the proposed structures is not given, although it is said to have been, as to each of said bridges, less than $1,000. But in Rev. Stat. 798 (Lan. 1762), it is provided, that,

"When the estimated cost of any * * * bridge or bridge substructure or of making any addition thereto or repair thereof, does not exceed $200 the same may be let at private contract without any publication or notice thereof."

The pleadings nowhere aver that these bridges were not of the class so specified in the statute,—that is to say, bridges of an estimated cost not to exceed $200; and the bids of the relators indicate that no one of the bridges was to cost the county upon such bidding as much as $200.

Upon this state of facts we fail to discover that there was any requirement of the statute that the contract should be let to the competition of bidders at all. If the county commissioners saw fit to invite offers from contractors, it was their privilege so to do. The action taken by them, so far as disclosed by the amended petition, was entirely voluntary and it was within the power of the commissioners, when so acting, to reserve to themselves the right to reject any or all bids, as in terms they did. With this reservation, neither the relators nor any other bidder had a right to insist upon the acceptance of a bid, and

after the opening and inspection of several bids, the commissioners might, if they chose, permit any amendments of such offers tendered them, so as to obtain the best figures for the county.

These views, of course, dispose of the questions as to the right of the relators to either injunction or mandamus, or both.

We find no error in the conclusion reached by the court below, and the judgment will be affirmed.